UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DAVID GARCIA and SERGIO        *
SEATON, INDIVIDUALLY and on    *
BEHALF OF ALL OTHERS SIMILARLY *
SITUATED,                      *
                               *
        Plaintiffs             *
                               *
    v.                         *  CIV. NO. SA-12-CA-0703-FB
                               *
CHAMPION GLASS, LLC, RAYMOND   *
LUNA, DAVID A. LUNA, and       *
JOSEPH A. LUNA,                *
                               *
            Defendants.        *

## MEMORANDUM AND RECOMMENDATION

Before the Court is defendants' Champion Glass, LLC, Raymond Luna, David A. Luna, and Joseph A. Luna's motion for summary judgment. (Docket nos. 48 and 50). Plaintiffs, David Garcia and Sergio Seaton, Individually and On Behalf of All Others Similarly Situated, have responded. (Docket no. 49). Upon consideration of the motion, response, and applicable law, the Court believes defendants' motion should be **DENIED in part and GRANTED in part.**

## BACKGROUND

Defendant, Champion Glass, LLC ("Champion"), is a commercial sub-contractor company based in San Antonio, Tx., owned and operated by defendants, Raymond Luna, David A. Luna, and Joseph A. Luna. Champion provides a variety of construction-related services involving both new construction and repair services in the San Antonio and surrounding areas.

Plaintiffs, who were employed by defendants to work at several construction sites, allege that defendants "control, or have the authority to control, the terms and conditions of employment for the Plaintiffs and similarly situated employees, including their hours and pay" and further, "own or control the locations where Plaintiffs and similarly situated employees work and provide their tools and equipment." (Docket no. 1, pg. 4). Plaintiffs further allege that they regularly worked in excess of forty hours each week but were not paid overtime or for work related travel time, preparation, and clean up activities performed at defendants' direction. (Id.).

Plaintiffs brought this collective action for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against their employer, Champion, along with the owners and operators of the company, Raymond Luna, David A. Luna and Joseph A. Luna. (Id.). Garcia and Seaton, the original plaintiffs, filed suit to recover for hours not compensated with respect to the following: (1) preliminary work performed at Champion before departing to the job sites; (2) travel time spent in getting to the job sites; (3) travel time spent in returning from the job sites to Champion; and (4) postliminary work performed upon returning to Champion from the job sites. (Id., pg. 4, ¶ 13-4). After Garcia and Seaton filed suit, a number of former

employees opted-in to recover compensation for the same unpaid time Garcia and Seaton claim are owed to them.

Plaintiffs allege that they were typically paid for a 7:00 a.m. to 3:30 p.m. workday, although they worked from 6:30 a.m., the time they were instructed to arrive at Champion for transportation to the job site, until 4:00 p.m. or later, the time they returned to Champion via company-provided transportation. Plaintiffs further allege that upon arrival at Champion, both at the beginning of the day and the end of the day, they would assist in loading and unloading equipment and supplies, as well engaging in other activities in preparation for the work day. Presently before the Court is defendants' motion for summary judgment. (Docket no. 48).

## STANDARD OF REVIEW

Summary judgment shall be rendered if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED.R.CIV.P. 56(a)**. The plain language of this rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A summary judgment movant or opponent must cite to materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED.R.CIV.P. 56(c)(1). An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated. FED.R.CIV.P. 56(c)(4). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact, (2) consider the fact to be undisputed for purposes of the motion, or (3) grant summary judgment if the motion and supporting materials show that the movant is entitled to it. FED.R.CIV.P. 56(e).

## APPLICABLE LAW

Pursuant to the FLSA "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such

4

employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." **29 U.S.C. § 207(a)(1).** In an effort to narrow the scope of compensable activities under the FLSA, the Portal-to-Portal Act was enacted and exempts employers from liability under the FLSA for the following:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

**29 U.S.C. § 254(a);** *IBP, Inc. v. Alvarez*, 546 U.S. 21, 27, 126 S.Ct. 514, 520 (2005).

"Principal activity" has generally been construed to include activities "'performed as part of the regular work of the employees in the ordinary course of business ... [the] work is necessary to the business and is performed by the employees, primarily for the benefit of the employer....'" *Vega v. Gasper,* 36 F.3d 417, 424 (5th Cir. 1994)(*citing* *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 401 (5th Cir. 1976)). Any activity that is "integral and indispensable" to a compensable "principal activity" is itself a compensable "principal activity" for purposes of the

Portal-to-Portal Act. ***Alvarez***, 546 U.S. at 37; ***Steiner v. Mitchell***, 350 U.S. 247, 252-53 (1956).

An employee seeking to bring a claim for overtime pursuant to the FLSA must first demonstrate he has performed work for which he alleges he was not compensated. ***Harvill v. Westward Commc'ns, L.L.C.***, 433 F.3d 428, 441 (5th Cir. 2005)(*citing* ***Anderson v. Mt. Clemens Pottery Co.***, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192 (1946)). An employee meets his requisite burden of proof if "he proves that he has in fact performed work for which he was improperly compensated," and "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." ***Id.*** If the employee is able to meet his initial burden, the burden then "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." ***Id.***

## DISCUSSION

Defendants move for summary judgment maintaining that plaintiffs' claims are unsupported in law and fact. In particular, defendants contend that the work for which plaintiffs seek overtime pay is not compensable under the FLSA; and plaintiffs have failed to meet their burden of producing admissible evidence to support their allegations that they performed work for which they were not compensated. In support of their motion, defendants submit the

6

following summary judgment evidence: exh. 1- Affidavit of Raymond Luna; exh. 2- Affidavit of Joseph Luna; exh. 3- Group 1 Plaintiffs' Discovery Responses; exh. 4- Group 2 Plaintiffs' Discovery Responses; exh. 5-Letter of Conferral; exh. 6- Plaintiffs' Supplemental Discovery Responses; and exh. 7- Plaintiffs' Declarations.

Plaintiffs respond that there is a genuine issue of fact regarding whether plaintiffs' preliminary work, travel time to and from the job sites, and postliminary activities after arriving to Champion are compensable time.  In support thereof, plaintiffs submit the following summary judgment evidence: exh. A- Deposition Excerpt of Sergio Seaton; exh. B- Deposition Excerpt of David Garcia; exh. C- Deposition Excerpt of Joe A. Luna; exh. D- Deposition Excerpt of Wendell Walker; exh. E- Deposition Excerpt of Johnny Cantrell; exh. F- Deposition Excerpt of Clifford Moczygemba; exh. G- Deposition Excerpt of Paul DeHoyos; exh. H- Defendants' Daily Time Reports; exh. I- Defendants' Payroll Records; exh. J- Weekly Tool Inspection Checklist; and exh. K- Plaintiffs' Responses to Defendants' Interrogatory No. 3.

### I. Are Plaintiffs' Activities Compensable under the FLSA?

Initially, defendants move for summary judgment as to plaintiffs' claims that they were not paid for work related travel time, preparation, and clean-up activities purportedly performed at defendants' instruction.  Defendants maintain that the preliminary

and postliminary activities are not compensable under the FLSA and further, that these activities do not convert ordinary home-to-work travel into compensable time. Citing *Vega*, defendants first argue that plaintiffs' travel time is not compensable because "[l]ike in *Vega*, Plaintiffs here were offered optional transportation from Champion Glass's shop to the job site, subject to an understanding that travel time was not compensable." *Id.*, 36 F.3d 417 (*citing* **29 U.S.C. § 254(a)(2))**(providing that the employer is not exempt if there is an express agreement between the employee and employer or there is a custom or practice in effect at the time of the activity).

In *Vega*, farm workers who spent at least four hours daily traveling to and from chile pepper fields sued to recover wages for their travel time. *Id.* at 424. The Court of Appeals found that the travel time "was a noncompensable preliminary and postliminary activity based on the Portal-to-Portal Act and related jurisprudence." *Id.* at 425. The Court reasoned that: 1) no work was performed by the employees either before or during the bus rides; 2) employees did not load tools or supplies or engage in preparatory work either before commencing their principal activity or during the bus rides; 3) the act of merely receiving instructions regarding the day's work and pay was insufficient to render this time compensable; 4) the employees' utilization of the employer's transportation was optional; 5) the length of travel

time, by itself, was insufficient to render the travel time compensable; and 6) the employees were not required to travel between job sites after engaging in their principal activities. ***Vega***, 36 F.3d at 425; ***see also Cantu v. Milberger Landscaping, Inc.***, No. SA-13-CV-731, 2014 WL 1413528, *2 (W.D. Tex. April 10, 2014).

Unlike the plaintiffs in ***Vega***, the plaintiffs in the present case contend that, notwithstanding the voluntary transportation, they were required to arrive at 6:30 a.m., and worked prior to departing to the job sites and upon their return to Champion at the end of each day. Specifically, Sergio Seaton testified that he drove a truck and was instructed to show up every day at 6:30 a.m. (Docket no. 49, exh. A). He further testified that he was required to check the oil and water in the truck before they left, drive the truck around to load it, hitch up the trailer, and do whatever else "needed to be done." (Id.). Seaton also stated that during meetings, employees were told they had to report by 6:30 a.m. if they wanted a ride to the job site. (Id.). Similarly, David Garcia testified that initially he reported at 6:50 a.m., but was told he had to report at 6:30 a.m. (Id., exh. B). Garcia, who drove a truck for one year when he first started with the company, also stated that he would arrive at 6:30 a.m., and they would begin loading the materials needed for the day's work, including panels, and curtain walls. (Id.). Garcia testified that if you did not

bring materials to the job site, you could not work and would just be standing there because you needed to install the materials you loaded. (Docket no. 49, exh. B). Garcia also testified that when he returned to Champion at the end of the day, he would unlock the gates and help unhitch and unload the trailer, park the truck, and put away the keys. (Id.). A number of other plaintiffs affirmed that they were instructed to report at 6:30 a.m. if they wanted a ride; that they would begin loading tools and equipment prior to clocking in and departing for the job site; that they would be instructed on where they would be working that day; and that upon their return to Champion from the job site, they would unload tools and equipment although they were not paid for this time if it was after their regular 7:00 a.m.- 3:30 p.m. "shift". (Id., exhs. B and E).

In fact, Joseph Luna, one of the defendants and an owner of Champion, testified that someone had to drive the truck daily, and that there were materials, tools, etc. that needed to be transported from the shop to the job site on a daily basis. (Id., exh. C, pg. 23). Most tellingly, Luna testified that he had meetings to discuss the importance of a "full load-work hours on-site" and admitted that although he directed employees not to begin working until 7:00 a.m., he observed employees arriving before 7:00 a.m., and begin working loading and doing other things but he never told them to stop. (Id., pgs. 25-6).

Defendants seek to dismiss these activities as inconsequential, maintaining that "Champion Glass usually utilizes separate vehicles, loaded and driven by employees who are not Field Employees and are based out of the Champion Glass shop, to transport tools and supplies to job sites" and that "some Field Employees occasionally help out their job Foreman by grabbing a box or two of small supplies for transport to the job site in the vehicles utilized for employee transportation." However, plaintiffs submit summary judgment that they were instructed to perform tasks, prior to and after their normal "shifts", that were substantial and "integral and indispensable" to the plaintiffs' work. Consequently, there is an issue of fact regarding whether plaintiffs engaged in principal activities "necessary to the business" and "performed by the employees, primarily for the benefit of the employer" both prior and subsequent to the shifts they were compensated for, for which they did not receive compensation.

If plaintiffs did, in fact, engage in principal activities at Champion prior to departing to the job sites and upon return from the job sites, plaintiffs would also be entitled to compensation for their travel time. **29 C.F.R. § 790.6(b)** (providing that "'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities'"). Further, the Department of

Labor clearly provides that if an employee "pick[s] up or carr[ies] tools' before or after traveling to a job site, that travel time is compensable working time." **29 C.F.R. § 785.38; *see also* *Cantu***, 2014 WL 1413538 *3 (*quoting* **Vega**, 36 F.3d at 425 ("They did not load tools or engage in activities that prepared them or their equipment for picking chile peppers before or while riding the buses.") *and* **Griffin**, 507 Fed.Appx. at 383 ("[H]e neither performed any work prior to the beginning of his shift at the Motiva Plant nor received any work-related instructions prior to or during the bus rides.")).

Defendants argue in their reply that because plaintiffs were not required to report to Champion but rather, were given the option to do so, that "picking up or carry[ing] [] tools" in and of itself is not compensable. However, defendants present evidence that they reported to Champion for free transportation and once there, were instructed to perform other work, including picking up tools and materials. The regulation specifically provides: that "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." **29 C.F.R. §785.38.** Accordingly, defendants' argument is unavailing.

Because there is a material question of fact as to whether plaintiffs performed uncompensated work before traveling to the job site and after returning to the job site, defendants' motion for summary judgment, based on defendants' argument that the activities and travel times that plaintiffs seek compensation for are not compensable under the FLSA, lacks merit and should be **DENIED.**

## II. *Have Plaintiffs' Met Their Prima Facie Case?*

Defendants next maintain that although plaintiffs seek to bring an action pursuant to the FLSA based on unpaid overtime compensation, they have failed to demonstrate that they performed work for which they allege they were not compensated. Where it is alleged that an employer has failed to keep accurate records, as in the present case, an employee meets his burden by proving he has performed work for which he was not properly compensated and by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.[1] *Anderson*, 66 S.Ct. at 1192; *see also Harvill*, 433 F.3d at 441.

---

[1]The summary judgment evidence provided by both sides demonstrates ample evidence that defendants failed to keep accurate records, including the following; plaintiffs were instructed to begin work at 6:30 a.m. but told not to punch in until 7:00 a.m.; regardless of the time plaintiffs returned to Champion, plaintiffs were told to indicate they stopped working at 3:30 p.m. on their Daily Job Reports; Ray Luna stated he needed his drivers at 6:30 a.m., and that if anyone needed a ride, they also needed to be there at 6:30 a.m. working; Joe Luna was in charge of payroll and stated that they were constantly struggling with getting hours and times in and that they were working on improving their record keeping as to the times employees worked; and Luna also testified that he witnessed employees showing up before 7:00 a.m. and begin working and he never told them to stop, although he knew they were off the clock. (Docket no. 49, exh. C, pgs. 15, 25-6; Docket no. 50, App. 491; 505).

Defendants initially contend that Group 1 Plaintiffs' claims must be dismissed because plaintiffs Frank Aguilar, Charlie Brooke, Anthony Flores, Adolph Lopez, Michael Patlan, Michael A. Pena, Michael L. Smith, and Rudy Vela, submitted unverified interrogatory responses, along with incomplete answers and improper objections. Additionally, defendants contend that while Group 2 Plaintiffs, Jesus Aguilar, Jr., Johnny Alvarez, Gilbert Galvan, David Garcia, Randolph Jamison, Antonio Lopez, Jr., Jesus Ramirez, Sergio Seaton, and Thomas A. Willis, submitted verified interrogatory responses, they too submitted improper objections and incomplete answers, stating that they would supplement their discovery responses at a later date.

While unverified answers to interrogatories and interrogatories not based on personal knowledge are not competent summary judgment evidence, here plaintiffs have not submitted their unverified answers as summary judgment evidence.[2] *Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F.Supp.2d 622, (S.D. Tex. 2012)(*citing Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965)). Further, although defendants complain that plaintiffs filed improper objections to their discovery requests and failed to otherwise supplement their evasive and/or incomplete responses,

---

[2]The only interrogatory answers relied upon by plaintiffs are those of Antonio Lopez, David Garcia, Gilbert Galvan, Jesus Aguilar, Jesus Ramirez, Johnny Alvarez, Randolph S. Jamison, Sergio Seaton, and Thomas Willis. (Docket no. 49, exh. K). Although plaintiffs do not attach the complete document, defendants do not contend that these plaintiffs provided verified responses. (Docket no. 48, pg. 16).

defendants as the requesting party, had the burden of seeking a motion to compel while plaintiffs, as the objecting party, had the burden of justifying their objections. **FED.R.CIV.P. 37(a)(3)(B) (iii), (a)(4)** (party may file a motion to compel if interrogatories are not answered or if the answers are evasive or incomplete); **see Pan-Islamic Trade Corp. v. Exxon Corp.**, 632 F.2d 539, 552 (5th Cir. 1980). Defendants did not file a motion to compel and therefore, plaintiffs' purported failure to appropriately respond or object to defendants' discovery requests is not a matter presently before the Court. Instead, the Court considers whether plaintiffs have presented sufficient evidence to raise a genuine issue of fact as to whether they performed work for which they were not compensated.

As summary judgment evidence, plaintiffs collectively submit a number of defendants' Daily Job Reports dating from March 11, 2010 thru December 22, 2011, which reflect that virtually every employee consistently clocked in at 7:00 a.m. and clocked out at 3:30 p.m.[3] (Docket no. 49, exh. H). Additionally, plaintiffs submit Defendants' Payroll Records reflecting employees' pay records from September of 2009 thru July of 2012, which also reflect very little overtime noted.[4] However, with respect to Group 1 Plaintiffs, Frank Aguilar, Charlie Brooke, Anthony Flores,

---

[3]These records were provided to the Court in random order with some Daily Job Reports being duplicated while, in many other instances, the "Daily" Job Reports were missing altogether.

[4]These records were also provided to the Court in random order with multiple duplicates and a large number of weekly and monthly reports missing.

15

Adolph Lopez, Michael Patlan, Michael A. Pena, Michael L. Smith, and Rudy Vela, plaintiffs submit no testimony or evidence regarding the number of unreported hours they allegedly worked, the type of work performed, whether they unloaded tools and supplies before departing Champion and upon their return to Champion, their rate of pay, or the amount allegedly owed. While arguably some of this information can be gleaned from the Daily Reports and Payroll Records, the majority of this information remains unknown.

Plaintiffs argue that "when an employer fails to maintain accurate timekeeping records, the burden shifts to the employer to come forward with evidence to negate the reasonableness of the inference from the employee's evidence." Additionally, plaintiffs contend that they "have made it clear that they are owed at least five hours of overtime for each week they were employed with defendants" and that "there is no question as to the regular rate at which plaintiffs were paid while working for defendants." However, before the burden shifts to defendants, plaintiffs must produce sufficient evidence showing the amount and extent of work as a matter of "just and reasonable inference." **Harvill**, 433 F.3d at 441.

Here, notwithstanding plaintiffs' assertions, the Group 1 Plaintiffs fail to meet their burden. The discovery responses for the Group 2 Plaintiffs, and the deposition testimony provided, reflects that the plaintiffs performed different jobs and were paid

from $8.00 an hour to $12.50 an hour.  While arguably there is some
evidence that the Group 1 Plaintiffs are owed at least five hours
of overtime for each week they were employed with defendants, based
on the 'fairly representational' testimony of the testifying
employees, the regular rate at which the nontestifying plaintiffs
were paid while working for defendants is completely unknown, as is
the type of work performed, including the extent of plaintiffs'
duties prior to departing from Champion and upon their return.
*Compare Albanil v. Coast 2 Coast, Inc.*, 444 Fed.Appx. 788, 806 (5th
Cir. 2011)(*citing **Brennan v. Gen. Motors Acceptance Corp.***, 482 F.2d
825, 829 (5th Cir. 1973)("holding that the plaintiffs established
a *prima facie* case that all plaintiffs worked unreported hours
through representative testimony")) **with *Von Friewalde v. Boeing
Aerospace Operations, Inc.***, 339 Fed. App'x 448, 456 (5th Cir.
2009)(affirming summary judgment against plaintiffs in a collective
action where plaintiffs failed to submit summary judgment evidence
and had not provided any substantive answers to the defendant's
interrogatories because "'the details surrounding each of their
claims var[ied] in significant ways, such that few if any of the
[plaintiffs] were similarly situated for purposes of the FLSA" and
further, "because those [plaintiffs] had numerous opportunities to
provide deposition testimony, affidavits, documents, or answers to
interrogatories in support of their claims.").  Moreover,
plaintiffs fail to cite to materials in the record, or otherwise

show, with respect to the Group 1 Plaintiffs, the presence of a genuine dispute. **FED.R.CIV.P. 56(c)(1)**.

Because the Group 1 Plaintiffs failed to demonstrate that they performed work for which they were not properly compensated, and further, failed to produce evidence to show the amount and extent of any work allegedly performed as a matter of just and reasonable inference, summary judgment should be **GRANTED** as to the Group 1 Plaintiffs Frank Aguilar, Charlie Brooke, Anthony Flores, Adolph Lopez, Michael Patlan, Michael A. Pena, Michael L. Smith, and Rudy Vela.

With respect to the Group 2 Plaintiffs, Jesus Aguilar, Jr., Johnny Alvarez, Gilbert Galvan, David Garcia, Randolph Jamison, Antonio Lopez, Jr., Jesus Ramirez, Sergio Seaton, and Thomas A. Willis, plaintiffs have submitted their verified interrogatory responses as summary judgment evidence. (Docket no. 49, exh. K). In response to defendants' interrogatories, plaintiff Jesus Aguilar, Jr., responded that he was hired in May of 2006, and continued working until June of 2011; that he earned $10.50 an hour; that he was a glazer and installed glass; that he set up frames, drove, loaded, and assembled; that he regularly worked from 6:30 a.m. until 4:00 p.m.; and that he worked at least five hours in excess of forty hours per week. (Id.). Plaintiff Johnny Alvarez was hired in Oct. of 2006, and continued working until July

of 2012.[5] Alvarez responded that he earned $11.00 an hour; that he was a glazer responsible for installing glass; that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; and that he worked at least five hours in excess of forty hours per week. (Docket no. 49, exh. K). Plaintiff Gilbert Galvan was initially hired in June of 2006, and worked until August of 2010, and was rehired in May of 2012 and worked until July of 2012.[6] Galvan responded that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he worked at least five hours in excess of forty hours per week; that he earned $10.50 an hour; and that he was a glazer and installed glass. (Id.). Plaintiff David Garcia was hired in August of 2009, and continued working until March of 2012.[7] Garcia responded that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he worked at least five hours in excess of forty hours per week; that he earned $10.00 an hour; and that he was a helper and glazer, responsible for installing glass and aluminum. (Id.). Additionally, Garcia testified that he was told he had to report at 6:30 a.m.; that he drove a truck for one year when he first started with the company; that upon his arrival at 6:30 a.m., they would begin loading the materials needed for that day's work, including

---

[5]Some of this information was obtained from Alvarez's Declaration. (Docket no. 48, App. 467).

[6]This information was obtained from Galvan's Declaration. (Docket no. 48, App. 473).

[7]This information was obtained from Garcia's Declaration. (Docket no. 48, App. 476).

panels, and curtain walls; and that when he returned to Champion at the end of the day, he would unlock the gates, help unhitch and unload the trailer, park the truck, and put away the keys. (Docket no. 49, exh. B). Plaintiff Randolph Jamison was hired in June of 2006, and continued working until June of 2012.[8] Jamison responded that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he worked at least five hours in excess of forty hours per week; that he earned $10.50 an hour; and that he was a glazer and installed glass. (Id., exh. K). Plaintiff Antonio Lopez, Jr. was hired in December of 2008, and resigned in December of 2009; he was rehired in January of 2010 and worked until May of 2010.[9] Lopez stated that he worked 6:00 a.m. to 5:00 p.m. most days; that he earned $8.00 an hour; and that he was responsible for installing glass, cutting metal, loading materials into the truck, and cleaning the shop. (Id.). Plaintiff Jesus Ramirez was initially hired by defendants in December of 2008 and worked until December of 2009; he was rehired in January 2010, and worked until May of 2010.[10] Ramirez responded that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he worked at least five hours in excess of forty hours per week; that he earned $12.50 an hour; that

---

[8]This information was obtained from Jamison's Declaration. (Docket no. 48, App. 479).

[9]This information was obtained from Garcia's Declaration. (Docket no. 48, App. 476).

[10]This information was obtained from Ramirez's Declaration. (Docket no. 48, App. 488).

he was a foreman; and that his duties included making sure that guys were working and that frame was fabricated correctly. (Docket no. 49, exh. K). Plaintiff Sergio Seaton was employed by defendants from January of 2010 until October 2013.[11] Seaton responded that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he worked at least five hours in excess of forty hours per week; and that he earned $11.00 an hour. (Id.). Additionally, Seaton testified that he was instructed to show up every day at 6:30 a.m. and drive the truck; that he was required to check the oil and water in the truck before they left, drive the truck around to load it, hitch up the trailer, and do whatever else "needed to be done"; and that during meetings, employees were told they had to report by 6:30 a.m. if they wanted a ride to the job site. (Id., exh. A). Finally, plaintiff Thomas A. Willis responded that he was hired in July 2010, and resigned on October or November of 2012; that he was a glazer responsible for installing glass and window framing; that he worked from 6:30 a.m. until 4:00 p.m. on a regular basis; that he earned $11.00 an hour; and that he worked at least five hours in excess of forty hours per week. (Id., exh. K).

In their Declarations, plaintiffs' Jesus Aguilar, Jr., Johnny Alvarez, Gilbert Galvan, David Garcia, Randolph Jamison, Jesus Ramirez and Sergio Seaton also attested to the following:

---

[11]Some of this information was obtained from Seaton's Declaration, while Seaton's termination date was provided by defendants in their motion. (Docket no. 48, App. 483).

[Their] normal work week was from Monday through Friday.
[They] worked five days per week and Champion required
that [they] report to its headquarters each workday at
6:30 a.m. From there, [they] would load materials and
supplies and travel to work sites in and around the San
Antonio and New Braunfels areas. [Their] full workday
lasted from 6:30 a.m. to 4:00 p.m., with no more than a
half hour for a lunch break. Many of [their] workdays
would end at 4:30 p.m. or later, and when [they] worked
outside of San Antonio or far from the shop, [they] would
start at 6:15 a.m., which occurred for over 6 months.
Though [they] worked over forty each week, Champion would
pay [them] only for forty hours each week. Champion
never paid [them] for [their] work related travel time,
preparation, or clean-up activities. No matter how long
[they] worked each day, Champion only recorded [their]
time from 7:00 a.m. to 3:30 p.m.

(Docket no. 48, Plaintiffs' Declarations).

Arguably, the evidence cited to raises a genuine issue of fact
regarding whether the Group 2 plaintiffs performed work for which
they were not properly compensated, and further, demonstrates the
amount and extent of that work as a matter of just and reasonable
inference. *Harvill*, 433 F.3d at 441. Nevertheless, defendants
argue that plaintiffs failed to provide a calculation or estimate
of damages. However, "[t]he evidence of the hours worked does not
have to be 'perfectly accurate,' but must provide 'a sufficient
basis to calculate the number of hours worked....'" *Nieddu v.
Lifetime Fitness, Inc.,* No. H-12-2726, 2014 WL 398603, *3 (S.D.Tex.
August 12, 2014)(*quoting* **Marshall v. Mammas Fried Chicken, Inc.**,
590 F.2d 598, 599 (5th Cir.1979)(*citing* **Hodgson v. Jones**, 434 F.2d
1061, 1062 (5th Cir.1970)); *see also Beliz v. W.H. McLeod & Sons
Packing Co.*, 765 F.2d 1317, 1330-31 (5th Cir. 1985)("Employees 'may

satisfy their burden with *admittedly* inexact or approximate evidence.'").

Here, in addition to evidence demonstrating defendants' failures to accurately record plaintiffs' time on the job, plaintiffs submit their hourly rate, their days of employment, their weekly schedule, the number of hours they were typically paid for, and a reasonable estimate of the hours they claim they were not compensated for on a weekly basis. While this is admittedly inexact, it provides a sufficient basis to calculate the number of hours worked and the damages alleged. Moreover, "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of" the Act. **See Donovan v. Grantham**, 690 F.2d 453, 458 (5th Cir.1982)(*quoting* **Anderson**, 66 S.Ct. at 1192).

Once an employee produces sufficient evidence to show the amount and extent of the work he alleges he performed for which he was not compensated as a matter of just and reasonable inference, "[t]he burden shifts to employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." **Anderson**, 66 S.Ct. at 1192; **see also Von Friewalde**, 339 Fed. Appx. at 455. If the employer fails to negate or offset

plaintiffs' evidence, damages may be awarded to the employee "even though the result may only be approximate." *Id.*

As evidence of the precise amount of work performed by plaintiffs, defendants submit "a set of consecutive time sheets," which they maintain reflect that while a typical day for plaintiff was 7:00 a.m. to 3:30 p.m., there were in fact many days when these hours varied. Defendants maintain that "[r]eview of the payroll records included in Defendants' Supplement Appendix to this Reply evidence Defendants' maintenance of time records, and negative the reasonableness of the inference Plaintiffs wish this Court to draw from the evidence Plaintiffs produced." Defendants argue that "[t]he select sample time sheets provided by Plaintiffs, which are neither for consecutive days nor provided in date order, conveniently support their argument that time was always recorded as 7:00 a.m.-3:30 p.m."

The records included in Defendants' Supplemental Appendix, which are also not in chronological order, appear limited to the months of August and September of 2010, and do not include records for each of the Group 2 Plaintiffs. While these records present some evidence that defendants paid overtime wages during this time to some of its employees, the records do not disprove plaintiffs' testimony that the Act was violated, nor does it "negative the reasonableness of the inference to be drawn from the employees' evidence that overtime hours had been worked without adequate

compensation.  *Anderson*, 66 S.Ct. at 1192; *see also Von Friewalde*, 339 Fed. Appx. at 455.

Accordingly, defendants' motion should be **DENIED** as to the Group 2 Plaintiffs, Jesus Aguilar, Jr., Johnny Alvarez, Gilbert Galvan, David Garcia, Randolph Jamison, Antonio Lopez, Jr., Jesus Ramirez, Sergio Seaton, and Thomas A. Willis.

### III. Evidence Regarding the Individual Defendants

In their reply, defendants explicitly argue for the first time that the claims against Raymond Luna, David Luna and Joe Luna, in their individual capacities should be dismissed because plaintiffs submitted no evidence supporting a violation by any of the individual defendants.  However, Garcia testified that he went to Joe Luna when he did not get paid for his travel time and was told the company did not have to pay him, although he was expected to show up at 6:30 a.m. to drive the truck.  (Docket no. 49, exh. B).  Additionally, Garcia testified that Joe Luna reportedly said that they needed to be at Champion at 6:30 a.m. or they weren't needed. (Id.).  Seaton testified that Joe Luna said they needed to be at Champion at 6:30 a.m. working.  (Id., exh. A).  Further, there was testimony that regardless of the number of hours worked, plaintiffs were told to document their times as having worked 7:00 a.m. to 3:30 p.m.  Also Joe Luna testified that he observed employees working before 7:00 a.m., and that although he knew they were not on the clock because their hours were typically from 7:00 a.m. to 3:30 p.m., he did not tell them to stop working.  (Id., exh. C).

Based on the foregoing, the Court believes plaintiffs have raised a genuine issue of fact as to defendant Joe Luna individually but have failed to present any evidence as to David Luna and Raymond Luna. Accordingly, defendants' motion should be **GRANTED** as to David Luna and Raymond Luna and **DENIED** as to Joe Luna.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the defendants' Champion Glass, LLC, Raymond Luna, David A. Luna, and Joseph A. Luna's motion for summary judgment be **DENIED** in part and **GRANTED** in part. (Docket no. 48). Specifically, defendants' motion should be **GRANTED** as to the Group 1 Plaintiffs, Frank Aguilar, Charlie Brooke, Anthony Flores, Adolph Lopez, Michael Patlan, Michael A. Pena, Michael L. Smith, and Rudy Vela; **GRANTED** as to David Luna and Raymond Luna, in their individual capacities; **DENIED** as to the Group 2 Plaintiffs, Jesus Aguilar, Jr., Johnny Alvarez, Gilbert Galvan, David Garcia, Randolph Jamison, Antonio Lopez, Jr., Jesus Ramirez, Sergio Seaton, and Thomas A. Willis; and **DENIED** as to Joseph Luna, in his individual capacity.

**Instructions for Service and**
**Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who

desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy.  Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.  A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from **de novo** review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court.  ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** October 23, 2014.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE